UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-22980-ALTMAN

LATOYA STARKS,

     *Plaintiff*,

*v.*

CARNIVAL CORPORATION,

     *Defendant.*

_____/

## AMENDED ORDER[1]

A passenger sued a cruise line over injuries she sustained while exiting a tender boat. The Defendant now moves to dismiss all five counts. After careful review, we **DENY** the motion to dismiss.

### THE FACTS

Our Plaintiff—Latoya Starks—was a "fare paying passenger on Carnival's vessel, the *Sunrise.*" First Amended Complaint (the "FAC") [ECF No. 9] ¶ 12 (cleaned up). On "May 11, 2024," "while the Carnival Sunrise was docked at Half Moon Cay," the Plaintiff tells us, she "was exiting the tender boat onto the island when she suddenly slipped and fell on a wet spot on the ramp." *Id.* ¶ 13. "When she returned to the ship," she "was evaluated by the ship's medical staff, who performed X-rays and diagnosed her with a fracture." *Ibid.*; *but see id.* ¶ 15 ("Immediately following the incident, Starks went to the medical station on Half Moon Cay but was informed they had no ice packs and was provided no assistance." (cleaned up)). Our Plaintiff claims that, "[a]s a result of the fall," she "suffered severe injuries including . . . a fracture at the base of her fifth metatarsal of her left foot, which has progressed

---

[1] This Amended Order supersedes and **VACATES** our June 23, 2026 Order [ECF No. 33].

to a subacute to chronic condition," and that she has been "diagnosed with Complex Regional Pain Syndrome," "with symptoms including allodynia, hyperesthesia, edema, decreased range of motion, and a cold, pulsating sensation in the calf and foot, and other injuries." *Id.* ¶ 14.

The Plaintiff sued the Defendant in July 2025. *See* Complaint [ECF No. 1]. She filed the operative FAC in October 2025. That same month, the Defendant filed the Motion to Dismiss (the "MTD") [ECF No. 12], and the Plaintiff responded with a Response in Opposition to the MTD (the "Response") [ECF No. 19]. In November 2025, the Defendant filed a Reply in Support of the MTD (the "Reply") [ECF No. 22].

## THE LAW

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1221 (S.D. Fla. 2023) (Altman, J.) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but legal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

## ANALYSIS

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters, and we rely on general principles of negligence law in analyzing those actions." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) (quotation marks omitted). "General principles of negligence law, as applied in the maritime context, recognize a claim based on a shipowner's direct liability for its own negligence or a claim based on a shipowner's vicarious liability

for another's negligence." *Ibid.* "Direct liability and vicarious liability are very different concepts[.]" *Ibid.*

The FAC asserts five counts.[2] The first three—Counts I–III—operate under a direct-liability theory. *See* FAC ¶¶ 57–105. The final two—Counts VI–VII—proceed under a vicarious-liability theory. *See id.* ¶¶ 106–129. We consider each theory in turn.

### I.     The Direct-Liability Claims

In adjudicating the first three counts, we must confirm two things: *one*, that the Plaintiff adequately alleges notice—actual or constructive—of the hazard in question; *two*, that Counts I–III state viable claims for relief. We conduct those inquiries below.

#### a.  Notice

"The elements of a negligence claim based on a shipowner's direct liability for its own negligence are well settled: a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Holland*, 50 F.4th at 1094 (quotation marks omitted). "With respect to the duty element in a maritime context, a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew," which "requires, as a prerequisite to imposing liability, that the carrier have had *actual or constructive notice* of a risk-creating condition[.]" *Ibid.* (cleaned up & emphasis added). "Actual notice exists when the defendant knows about the dangerous condition," whereas "[c]onstructive notice exists where the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite corrective measures." *Id.* at 1095 (quotation marks omitted). "A plaintiff can establish constructive notice by alleging that the

---

[2] The Plaintiff misnumbers the FAC, which jumps from Count III to Count VI.

defective condition existed for a sufficient period of time to invite corrective measures" or by "alleging substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident." *Ibid.* (cleaned up).

Our Plaintiff lists *seven* reasons for her view that the Defendant "either knew or should have known of the risk-creating and/or dangerous condition." FAC ¶ 17. The Defendant, for its part, maintains that the FAC "fails to plead sufficient facts establishing that Carnival had actual or constructive notice of any alleged dangerous condition." MTD at 4. As the Defendant sees it, the Plaintiff "merely alleges that Carnival knew or should have known of the alleged dangerous conditions for a myriad of vague and conclusory reasons." *Ibid.* After careful review, we find that the FAC adequately pleads constructive notice.

The Plaintiff first alleges that "[t]here were . . . crewmembers in the subject area within approximately 15 feet from the location of Starks' fall and were in the subject area prior to when Starks walked there," that those crewmembers "had direct line of sight on the location," "were within viewing distance thereof, and were close enough to have seen that the subject surface was wet," but that they "failed to block off, warn of, and/or clean up the subject liquid prior to [the] fall." FAC ¶ 17(a) (cleaned up). The Defendant argues that "[s]uch a conclusory allegation is insufficient to establish constructive notice." MTD at 4. We disagree.

Courts in our Circuit have regularly found similar allegations sufficient to plead a claim based on constructive notice. *See, e.g.*, *Iacoli v. MSC Cruises, S.A.*, 2024 WL 3509584, at *4 (S.D. Fla. July 23, 2024) (Altman, J.) ("Iacoli alleges that an MSC employee was between '10-15 feet of the exact location of IACOLI's fall *who witnessed the subject incident*, and *who was within plain viewing distance, close enough to have seen the subject water on the floor* since this crewmember was *looking right in the direction of the subject surface.*' Iacoli has thus done precisely what the *Holland* Plaintiff failed to do: allege that the employee could have observed or warned her of the hazard." (cleaned up)); *Hostert v. Carnival Corp.*, 2024 WL 68292,

at *5 (S.D. Fla. Jan. 5, 2024) (Altman, J.) ("A slip-and-fall plaintiff may also establish constructive notice . . . [by] show[ing] that the defendant's employees were in the vicinity of where the fall occurred, such that they *should've* known of the dangerous condition." (quotation marks omitted)); *see also Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018) (overruling the district court's decision to grant summary judgment for the cruise line because the plaintiff's allegations "place[d] the crewmember in the immediate vicinity of a puddle of soap that was one-and-a-half feet in diameter" and because, "[d]rawing all reasonable inferences in [the plaintiff's] favor, a factfinder could conclude that the crewmember knew or should have known about the puddle of soap at his feet and either removed the hazard or warned [the plaintiff] of it").

By alleging that the crewmembers were "within approximately 15 feet from the location of [the] fall," "had a direct line of sight on the location," "were within viewing distance thereof, and were close enough to have seen that the subject surface was wet," the Plaintiff has does enough to plead constructive notice. FAC ¶ 17(a). We can therefore dispense with the remaining six notice allegations and proceed to the merits of the direct-liability claims.

### b. The Merits

Because the Plaintiff has done enough to survive on her claim of constructive notice, we next consider whether Counts I–III state viable claims for relief. *See Newbauer v. Carnival Corp.*, 26 F.4th 931, 936 (11th Cir. 2022) ("[W]here, as here, a plaintiff is proceeding on a theory of direct liability against the shipowner for the negligent maintenance of the premises, the plaintiff must establish notice as part of her negligence claim."). We find that they do.

*First*, Count I alleges that the Defendant "breached the duty of reasonable care owed to Starks . . . by failing to adequately remedy the dangerous condition[.]" FAC ¶ 60 (cleaned up). It further alleges that this "breach proximately caused Starks great bodily harm in that the incident that occurred was a foreseeable result of Carnival's breach." *Id.* ¶ 65 (cleaned up). Paltry or not, that's

5

enough for the motion-to-dismiss stage. *See Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) ("To win on her maritime negligence claims, Amy must prove that, among other things not at issue here (i.e., breach, causation, and harm), Carnival had a duty to protect her from a particular injury."); *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1269 (11th Cir. 2020) ("[T]he open and obvious nature of a dangerous condition does not bar a claim against a shipowner for negligent failure to maintain safe premises."); *see also Holland*, 50 F.4th at 1097 ("[T]o hold a shipowner liable for maintaining dangerous premises," a plaintiff "must establish notice to the shipowner as a part of those claims.").

*Second*, Count II alleges that the Defendant "breached the duty of reasonable care owed to Starks . . . by failing to warn Starks of the dangerous condition[.]" FAC ¶ 73 (cleaned up). "To prevail on a negligent-failure-to-warn claim, a plaintiff must show that (1) the defendant had a duty to protect her from a particular injury—specifically, by warning the plaintiff of a particular hazard; (2) the defendant breached that duty; (3) the breach actually and proximately caused her injury; and (4) she suffered actual harm." *Iacoli*, 2024 WL 3509584, at *5 (cleaned up). But "[a]n operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 n.5 (11th Cir. 2019). "In determining whether a risk is open and obvious, we focus on what an objectively reasonable person would observe and do not take into account the plaintiff's subjective perceptions." *Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018) (cleaned up).

Our Plaintiff meets those requirements at this early stage of the action. As discussed, she sufficiently claims that the Defendant had at least constructive notice of the wet spot. She also alleges that the Defendant breached its duty by failing to warn of the danger and that this danger caused her to suffer injuries. And, crucially, she plausibly alleges that the hazard—the "wet spot on the ramp"— was "neither open nor obvious to reasonable passengers." FAC ¶¶ 13, 22. To be sure, the Plaintiff fails to *spell out* why the hazard wasn't open or obvious. Because we must make all reasonable

inferences in her favor, however, we can look to the factual allegation that she slipped on a "foreign transitory liquid substance." *Id.* ¶ 109; *see also Green v. Carnival Corp.*, 614 F. Supp. 3d 1257, 1265 (S.D. Fla. 2022) (Bloom, J.) ("By its plain terms, paragraph 13 alleges that the 'dangerous condition was not open and obvious.' While the paragraph is conclusory, it is supported by the factual allegation in paragraph 12 that 'Plaintiff slipped and fell due to grease, oil, food residue, and/or slippery foreign transitory substance.' The Court can reasonably infer in favor of Plaintiff, as the Court must at this stage of the proceedings, that the danger was not open and obvious given the inconspicuous nature of grease and oil." (citations omitted)). And that context pushes Count II over the plausibility line.

*Third* and finally, Count III alleges that the Defendant "negligently designed, or in the alternative, approved of the design of the subject area[.]" FAC ¶ 86. "To plead negligent design, a plaintiff must allege that Carnival actually created, participated in, or approved the negligent design, and that Carnival had actual or constructive notice of such hazardous condition." *Copeland v. Carnival Corp.*, 2025 WL 1684130, at *4 (S.D. Fla. June 16, 2025) (Altman, J.) (cleaned up). Here, our Plaintiff alleges that the Defendant (among other things) designed—or approved of the design—of the surface (1) "despite the fact that it lacked adequate slip-resistant material"; (2) "without incorporating visual cues . . . that would have allowed Starks to appreciate the danger posed by the wet ramp"; (3) "despite the absence of adequate safety measures to assist passengers in stabilizing themselves during disembarkation"; and (4) "despite the fact that the ramp became extremely slippery when wet." FAC ¶ 86 (cleaned up).

Those allegations state a viable negligent-design claim. *See Spotts v. Carnival Corp.*, 711 F. Supp. 3d 1360, 1370–71 (S.D. Fla. 2024) (Altman, J.) ("[T]he Complaint asserts [among other things] that Carnival 'breached its duty of care owed to SPOTTS and was negligent by approving, designing, constructing, and/or selecting, the flooring for the Lido deck on board the *Carnival Pride*.' . . . . Based on these allegations, we think that Spotts has done just enough to state a claim for negligent design.");

7

*Donaldson v. Carnival Corp.*, No. 20-23258-CIV, 2020 WL 6801883, at \*4 (S.D. Fla. Nov. 19, 2020) (Scola, J.) ("Indeed, this Court has previously held that where a plaintiff, as here, alleges that a cruise line defendant 'specified, approved and/or accepted' and was 'intimately involved with and ultimately approved the design' of the area that caused injury to a plaintiff, the plaintiff has stated allegations that are generally sufficient to survive a motion to dismiss." (cleaned up)); *Canyes v. Carnival Corp.*, 2022 WL 4270001, at \*3–4 (S.D. Fla. Sept. 15, 2022) (Bloom, J.) ("[T]he TAC alleges that . . . [the] Defendant actively participated in the design and construction of the cabin including the upper berth bed, the placement of the refrigerator adjacent to the wall on the floor and in proximity of the upper berth when it is in the lowered or down position and the upper berth bed with the sharp protruding latch. At the motion to dismiss stage, where the Court accepts the facts as alleged by Plaintiff, these allegations are sufficient." (cleaned up)).

## II.     The Vicarious-Liability Claims

That leaves the two vicarious-liability counts—Counts VI and VII. *See* FAC ¶¶ 106–129. "When an alleged maritime tortfeasor is an employee, the principle of vicarious liability allows an otherwise non-faulty employer to be held liable for the negligent acts of that employee acting within the scope of employment." *Branyon v. Carnival Corp.*, 2025 WL 4100438, at \*6 (S.D. Fla. Nov. 18, 2025) (Altman, J.) (quotation marks omitted). A plaintiff asserting a vicarious-liability claim "need not establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees." *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021); *see also Holland*, 50 F.4th at 1094 ("[A] shipowner's duty to a plaintiff is not relevant to a claim based on vicarious liability."). But a plaintiff must still "identify [a] specific crewmember whose negligence cause[d] [her] injury" while that employee was acting within the scope of his employment. *Ibid.* "A complaint in a vicarious liability case need not identify the negligent agent

by name, so long as it identifies the agent by other means such as job duties or actions committed by the agent." *Branyon*, 2025 WL 4100438, at *6 (quotation marks omitted).

As a threshold matter, our Defendant contests the Plaintiff's ability to bring vicarious-liability claims. *See* Reply at 9 ("Plaintiff has not shown that the circumstances of her case allow her to proceed under a theory of vicarious liability[.]"). It also argues that Count VI is "duplicative of Count II" in that it "identically alleges that Carnival's crewmembers failed to warn and/or assist Plaintiff in avoiding the wet spot," and that "Count VII is duplicative of . . . Count III" in that both counts "allege that Carnival is liable for the acts of its employees." MTD at 12, 15. We disagree.

"[V]icarious-liability claims and direct-liability claims aren't duplicative of one another": "In direct-liability claims, after all, the plaintiff must show that the defendant had notice of the dangerous condition—a requirement that same plaintiff doesn't have to prove in her vicarious-liability claim." *Branyon*, 2024 WL 3103313, at *5; *see also ibid.* ("As many of our colleagues have explained, a plaintiff is entitled to plead vicarious-liability claims in the alternative to her direct-liability claims for negligent maintenance or negligent failure to warn." (cleaned up)). We must therefore analyze these two vicarious-liability counts on their merits.

*First*, Count VI alleges that a "crewmember who was in the immediate vicinity of the subject surface"—and who "was an agent of Carnival"—"should have warned and/or assisted Starks." FAC ¶ 108 (cleaned up). For the reasons we discussed above, Count VI supplies enough factual allegations to establish that the employees had constructive notice of the hazard.[3] And it identifies a specific employee, even if not by name: "[t]he crewmember who was in the immediate vicinity of the

---

[3] That Count VII operates within a vicarious-liability context relieves the Plaintiff of the need to plead that the *Defendant* had *notice* of the hazard—but not the need to plead that the *employees* (for whom the Defendant is vicariously liable) breached a "duty to exercise reasonable care under the circumstances." FAC ¶ 107. Still, our Plaintiff clears this hurdle by alleging that the crewmembers were nearby and facing the spot.

subject surface[.]" *Id.* ¶ 107; *see also Mclean v. Carnival Corp.*, 2023 WL 372061, at *3 (S.D. Fla. Jan. 24, 2023) (Scola, J.) ("While the Plaintiff does not specifically name the crewmembers, there is no requirement in the law that she do so, and it would seem fundamentally unfair to require the Plaintiff to remember the names of each of the crewmembers involved in the incident simply to file a complaint.").

*Second*, Count VII alleges that the Defendant is "vicariously liable for the active negligence of its crew for their negligent design, construction, and selection of the subject area." FAC ¶ 117. To that end, it alleges (among other things) that "CARNIVAL operated, controlled and/or maintained departments of employees who are responsible for repairs, redesign, upgrades, updates and/or modifications"; that the "New Build Department and Refurbishment Departments . . . create review and/or approve all designs, construction, selection of materials, repairs, redesign, upgrades, updates and/or modifications"; that "CARNIVAL's employees participated in and/or approved of the design of the subject area where STARKS fell, specifically, the ramp connecting the tender boat to the dock at Half Moon Cay"; and that the ramp "lacked anti-slip surfacing to mitigate the risk of falls during tender disembarkation." FAC ¶¶ 118–20. For the reasons set forth above, those negligent-design allegations supply enough detail to survive the MTD.

To be sure, Count VII identifies the relevant employees only in the abstract, referring (at best) to team-wide departments. But we've held that a plaintiff "doesn't need to identify a *specific* crewmember in her vicarious-liability claim" at this early stage of the litigation. *Mitchell v. Carnival Corp.*, 2024 WL 4818486, at *5 (S.D. Fla. Nov. 18, 2024) (Altman, J.). At summary judgment, of course, the Plaintiff *will* need to identify the specific employees who were responsible for the supposedly faulty design. For now, though, Count VII—clumsily or not—does enough to state a claim for relief.

10

### CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** that the Motion to Dismiss

[ECF No. 12] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on June 23, 2026.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

11